**Leonard D. HERMAN, Plaintiff,**

v.

**Margaret M. HECKLER,\* Secretary of the Department of Health and Human Services, Defendant.**

**No. CV 81–29–M.**

United States District Court,
D. Montana,
Missoula Division.

June 24, 1983.

H. James Oleson, Kalispell, Mont., for plaintiff.

Allen McKenzie, U.S. Atty., Butte, Mont., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

The Social Security disability benefits awarded to claimant Leonard Herman (Herman) beginning in August 1977 were terminated by the Social Security Administration (Administration) in February 1979.

\* The name of Margaret M. Heckler is substituted for that of resigned Richard S. Schweiker.

Herman appealed the order of termination and both the administrative law judge (ALJ) and the Appeals Council affirmed the administrative action.

The ALJ (Judge Hood) who made the initial award found as follows:

The claimant suffers from a rare and unusual disease which is not fully understood by the medical profession nor are there known cures therefor (Exhibits 7, 9, 11, 12, 13, 14, 15 and 23). His impairment is permanent (Exhibit 23). The claimant exhausts on the most minimal task, such as ten minutes writing (Exhibit 25). The general nature of claimant's medical problem is associated with "muscle enzymes" nerve disease with symptoms not uncharacteristic of multiple sclerosis (Exhibit 14). The claimant, as noted above, exhausts from the most menial task after extremely short duration and experiences severe pain sufficient to seriously interfere with the concentration on any type job activity. Severe pain occurs three to four times daily lasting in such degree for from ten to thirty minutes. The claimant can lift no more than ten pounds on a sustained basis, must alternate sitting and standing, has vision loss in the left eye and hearing loss in the left ear. The claimant is found to be a fully credible witness whose testimony is supported by the medical evidence. A qualified vocational expert witness was present at the hearing. He responded that a person fitting claimant's description with the cumulative impairments claimed would be unable to perform jobs existing in significant numbers that he could identify. The claimant is in fact burdened with such impairments in toto. His disability has existed since August 25, 1977.

The ALJ (Judge Burris) who affirmed the act of termination said:

I find that claimant's impairments hereinabove referred to, have not continuously been disabling within the meaning of Title II of the Social Security Act; that there has been, and is, just cause for cessation of benefits due to medical improvements and/or other reasons and that, therefore, claimant is not entitled to a continuation of benefits under the aforesaid Title II of the Social Security Act, as amended.

Judge Burris concluded in part:

Subsequently, and based on medical improvement, the Administration determined that claimant's disability ceased as of February 28, 1979, that benefits would terminate April 30, 1979 . . . .

The medical evidence and testimony clearly indicates that claimant has the residual functional capacity to at least perform sedentary work. Therefore, the Administration correctly found that the disability ceased as of February 28, 1979, and that benefits should terminate April 30, 1979.

Absent the prior determination of disability, I would, on the basis of all of the evidence, affirm the finding of the ALJ that "[t]he medical evidence and testimony clearly indicates that claimant has the residual functional capacity to at least perform sedentary work." Accepting as true the diagnoses of Dr. Peterson and the doctors at the Virginia Mason Clinic that Herman has myoadenylate deaminase, there is evidence from Drs. Norman, Boehme, and Schimpff that weakness caused by the disease is mild to moderate. The ALJ could have believed these doctors and could have believed that the claimant was not completely candid with the doctors who examined him. Thus Dr. Boehme reports inconsistencies in the results of the medical examination and concludes by saying: "I am very disturbed by his neurological exam however, in that his objective findings are all normal. However, tests which could be subjectively influenced are grossly abnormal. I am very suspicious that this man does not have some hysterical component influencing this examination." In an independent examination Dr. Schimpff noted: "He appeared very anxious during muscle testing and was very inconstant about delivering a good effort. Without considerable encouragement during the examination, much of the muscle testing would have demonstrated considerable focal weakness,

which disappeared with encouragement during the examination." Dr. Schimpff further stated: "As regards to the other complaints, I am also very optimistic, I do think that the diagnosis of multiple sclerosis is at all likely after reviewing this lengthy patient history and agree with Dr. Boehm [sic] and Dr. Peterson that there are prominent functional components."[1] There was also evidence that Herman had been attending school regularly with but minor difficulty.

Here, however, there is a previous finding of a disability which complicates the problem in light of the language in recent cases from the Ninth Circuit. The facts in these cases are not similar to those here, but the language in them causes me problems. In *Patti v. Schweiker*, 669 F.2d 582 (9th Cir. 1982), followed by *Iida v. Heckler*, 705 F.2d 363 (9th Cir.1983), the court held that, when the Administration determines that a claimant's disability has ceased, the burden of proof to establish otherwise lies with the claimant. The court then goes on to say that a prior ruling of disability can give rise to a presumption that the disability still exists and that the condition has remained unchanged. 669 F.2d at 586. The court concluded as follows:

> As we have said, when a claimant is entitled to the benefit of a presumption that her disability still exists, the burden is still on her to prove her case. All the presumption does is impose on the Secretary a burden to come forward with evidence that *her condition has changed*.

*Id.* at 587. (Emphasis added.)

Since district courts must live with the literal language of the circuit courts,[2] I assume that the court of appeals means what the words in its opinions say and that the Administration must prove that the physical condition of the claimant changed after the first determination of disability.[3]

I think that the ALJ determined that there had been a change for the better in Herman's condition between the first and second hearing, but the question of whether that finding rests on substantial evidence is difficult. If claimant has a diagnosable disease, it is a rare one about which little is known. The basic diagnosis in any event remains unchanged. With the exception later mentioned, there is no showing that there has been any remission of the disease or any diminution of the adverse symptoms. The report of Dr. Schimpff (post May 5, 1978) does not disagree with the diagnosis which was the basis of the original finding; rather it finds the consequences to be less disabling than Judge Hood thought them to be. Dr. Norman, an Administration doctor, reported an examination of the claimant on November 10, 1977, and on August 8, 1979, made another report. In the later report he affirmed the claimant's medical condition as described by Dr. Boehme in his report of September 23, 1977 (pre May 5, 1978). If there is, as mentioned by Judge Burris, a functional component to claimant's problems, as reported by Dr. Schimpff in 1979, that condition apparently existed in 1977 when Dr. Boehme made his examination.

I am unable to find any significant change in claimant's condition between May 5, 1978, and October 24, 1980, unless that change can be determined from the Physical Limitation Evaluation Forms (Form DDB-1 (9/76)). Three of these forms ap-

---

1. I believe from the context of this sentence that Dr. Schimpff omitted a "not" following the word "do" in the second line of this quoted statement. Judge Burris read the sentence as I do.

2. Judge Gray of the Central District of California has done so in the case of *Lopez v. Heckler*, No. 83–0697 (C.D.Cal., decided June 16, 1983).

3. As I read this language, it is not enough that the Administration prove, as I think it has here, that the claimant is not entitled to disability benefits at the time of the second hearing. This could be accomplished by proof that the first decision was wrong. But proving that the first decision was wrong does not prove that claimant's physical condition has changed. What the language of the Ninth Circuit opinion does is make an order granting disability benefits res judicata as to the facts as they existed at the time of the first hearing. How this result can be based on a presumption that does no more than shift the burden of going forward with the evidence, I do not know.

pear in the record. The first was filled out in 1977 by Dr. Norman. On August 8, 1979, the same form was completed by Dr. Norman. The later form shows a substantial improvement in claimant's capacity. Another form was completed by Dr. Hoopes, another Administration doctor, on August 9, 1979. It shows a much greater capacity than that reported by Dr. Norman in 1979. If the two later forms are given face value, then there has been a marked improvement in claimant's capacity to work. In view of the fact that there are few objective symptoms, that there is some evidence that claimant was not cooperative in his examinations, and that there is rather sharp medical conflict as to the amount of disability, I think evidence of this sort would have value. I am unable to determine, however, how the 1979 forms were prepared. It seems incredible that a report which is required to be based on objective findings could be made in the absence of the patient, but I find nothing in the record indicating that claimant was present or, if present, how the tests were conducted. I am unable to weigh these reports in the absence of some evidence as to how they were conducted.

I note that the ALJ relied on the testimony of claimant that he would like to try jobs as a cashier in a parking lot or a self-service gasoline station as proof of the availability of work in the community. I regard this as insufficient. The Administration may rely on proof that there are jobs available or that under the regulations plaintiff has sufficient residual capacity to do sedentary work.

The case is remanded to the Secretary for further proceedings in which the Secretary shall, as a minimum, prove the method by which the Physical Limitation Evaluation Form is completed and, on the basis of the administrative guidelines or actual testimony, prove the availability of other jobs.