Betty **BURGESS**, Plaintiff,

v.

Margaret **HECKLER** *, Secretary of Health and Human Services, Defendant.

No. C–1–82–1447.

United States District Court, S.D. Ohio, W.D.

Jan. 11, 1984.

---

* The only proper defendant in this action is the Secretary of Health and Human Services, Margaret Heckler. Fed.R.Civ.P. 25(d)(1). Accordingly, Margaret Heckler should be substituted as defendant Secretary in place of Richard S. Schweiker, and no further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Act, 42 U.S.C. § 405(g).

A.P. Anninos, Cincinnati, Ohio, for plaintiff.

Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, for defendant.

## OPINION AND ORDER

SPIEGEL, District Judge:

Plaintiff brought this action under 42 U.S.C. § 405(g) seeking review of the Secretary's decision finding that plaintiff is no longer disabled and terminating her disability benefits and her Supplemental Security Income (SSI). Both parties have filed motions for summary judgment (docs. 5 and 6). The motions for summary judgment are hereby overruled because the case is here for general judicial review.

In a termination case our Court of Appeals has stated without discussion that plaintiff bears the burden of establishing continued disability. *Myers v. Richardson,* 471 F.2d 1265 (6th Cir.1972). A decade has passed since the *Myers* decision, however, and the development of the law during that decade makes it clear that its conclusory statement is merely a starting point. We have adopted the approach used by the Ninth Circuit in *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982). Under that approach, once the Social Security Administration (SSA) determines that a disability has ceased the plaintiff has the burden of establishing otherwise. That burden is a continuing one. However, a prior ruling of disability gives rise to a rebuttable presumption that the disability continues. That presumption shifts the burden of going forward to the Secretary. *See also Brown v. Heckler,* 713 F.2d 441 (9th Cir. 1983). The *Patti* analysis is consistent with *Hayes v. Secretary of Health, Educa-*

*tion and Welfare,* 656 F.2d 204, 206 (6th Cir.1981). In that case the Court reversed the Secretary's termination of benefits on the ground that the evidence would not support the Secretary's conclusion that plaintiff's benefits should be terminated because her condition had improved. As we read *Patti* and *Hayes,* the appropriate test once a prior ruling of disability has been made is to presume that the disability is continuing unless the Secretary comes forward with evidence that plaintiff's condition has improved to the point that she is no longer disabled. Our job as reviewing Court thus is to determine if there is substantial evidence to support the Secretary's conclusion that plaintiff's condition has improved sufficiently so that she is no longer disabled. *Mullins v. Secretary of Health and Human Services,* 680 F.2d 472 (6th Cir.1982).

Following her application for disability benefits and SSI in November, 1975, the plaintiff was found disabled as a result of chronic obstructive lung disease (tr. 59). Benefits were awarded. The Secretary subsequently held that plaintiff was no longer under a disability as of October, 1981 and benefits were terminated the end of December, 1981 on the grounds that spirometry does not document a functionally restrictive impairment (tr. 64).

Plaintiff is now forty-nine years old and has an eighth grade education. She has some prior work experience as a packer in a candy factory and as a folder in a laundry. The record demonstrates that she has suffered from asthma since 1966 but worked until 1974 at which point her impairment became so severe that she was precluded from doing substantial gainful employment. Plaintiff has submitted a number of medical records and reports from her physician in support of her claim of continuing disability. These will be briefly reviewed.

Dr. Paul Foldes, who is board-certified in internal medicine and a specialist in pulmonary diseases, has been treating plaintiff since January, 1979. In a report dated September 17, 1981 he stated that plaintiff suffers from chronic asthmatic bronchitis, and experiences wheezing attacks every three to four weeks lasting from three or four days to a week with mild wheezing in between the attacks. The cause of the attacks was unknown. Plaintiff was being treated with Brethine, Aminopylline, Vanceril, Ventolin, plus heated mist and postural drainage twice a day. Dr. Foldes noted, however, that her response to this therapy was only fifty percent complete. He also stated that she becomes short of breath with moderate exertion (tr. 101–02).

When Dr. Foldes left the country in 1981, Dr. Renate Schiffer began treating the plaintiff. In a letter dated February 15, 1982, Dr. Schiffer stated that plaintiff suffers from severe pulmonary emphysema and asthmatic bronchitis secondary to alpha 1 antitrypsin deficiency and allergies. Dr. Schiffer noted that plaintiff had most recently been admitted to the hospital as a result of an asthmatic attack January 14, 1982. Medications as of the date of the letter include Theolair, Brethine, Vanceril and Ventolin Inhaler. In addition, plaintiff must use steam and percussion and postural drainage, preferably three times a day, to keep secretions from accumulating. Plaintiff also receives pulmonary rehabilitation treatments at the Good Samaritan Hospital including the IPPB machine and the tilt table. Dr. Schiffer added "any change in temperature, pollution, omission of treatments for any reason, stress and acute infections make her very much susceptible to acute asthmatic attacks," adding that any employment that failed to take all these factors into account would adversely affect plaintiff's health (tr. 117).

Dr. Schiffer also completed a Physical Capacities Evaluation dated December 22, 1981 in which she stated that during an eight hour day plaintiff could sit for eight hours, stand for one and walk not at all. In addition, Dr. Schiffer said that plaintiff can occasionally lift or carry up to five pounds but should never lift or carry anything over five pounds. She can use either hand for simple grasping or for pushing or pulling of arm controls or fine manipula-

tion as well either foot for repetitive motions. Plaintiff may occasionally bend, squat, crawl or reach but should never climb. Dr. Schiffer totally restricted plaintiff from activities involving unprotected heights, moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment and exposure to dust, fumes and gases (tr. 114).

Plaintiff was seen in the fall of 1981 on a consultative basis by Dr. Martin Fritzhand, a urological and general surgeon hired by the SSA (tr. 103–111). His history notes that plaintiff's symptoms have become increasingly severe over the past five or six years and that as of the date of the examination she could not walk more than two or three blocks without associated shortness of breath. He also noted that plaintiff reported she frequently awoke during the night with shortness of breath and has a long history of a chronic cough. Plaintiff told Dr. Fritzhand that she had been hospitalized approximately five years ago, approximately three years ago and approximately two years ago, or in other words in 1976, 1978 and 1979 (tr. 103). His physical examination revealed that plaintiff was slightly short of breath with exertion. His impression was bronchial asthma. Dr. Fritzhand summarized her situation as a middle-aged woman with a long history of asthma and shortness of breath (tr. 104). He conducted pulmonary function studies both before and after the use of bronchodilators. The clinical diagnosis was severe combined obstructive and restrictive pulmonary disease with a large bronchospastic component before the use of dilators and a mild combined airway impairment after the use of bronchodilators (tr. 106, 111). It appears that the pulmonary function tests conducted by Dr. Fritzhand were done with portable apparatus (tr. 50).

Also in the record are two pulmonary function tests performed on the plaintiff at the Good Samaritan Clinic. The first of these is dated February 12, 1980 (tr. 100). Her $FEV_1$ prior to the use of the bronchodilator was 1.18, and after use of the bronchodilator 1.29. Dr. Foldes' interpretation was that plaintiff had severe obstructive lung disease. A similar test was performed November 16, 1981 (tr. 112). At that time plaintiff's $FEV_1$ prior to use of the bronchodilator was .96 and after use was 1.25. An arterial blood gas test was done at the same time. Dr. Foldes again stated that plaintiff was suffering from severe obstructive lung disease and that the change in the $FEV_1$ was compatible with bronchial asthma in partial remission. The arterial blood gas results demonstrated "alveolar hyperventilation with mild hypoxia due to ventilation-perfusion imbalance and/or shunting." He added that the most likely acid-base diagnosis was systemic alkalemia due to chronic respiratory alkalosis (tr. 113).

The Administrative Law Judge (ALJ) submitted plaintiff's medical records and other pertinent evidence to Dr. James A. Schaal, board-certified in internal medicine and a specialist in pulmonary diseases, asking that Dr. Schaal review plaintiff's records and answer questions submitted by the ALJ (tr. 120–21). Dr. Schaal responded that plaintiff did not have a medically determinable impairment listed in Appendix 1, Subpart P of the Social Security Regulations No. 4. Nor did she have a medically determinable impairment severe enough to be the equivalent of a listed impairment (tr. 122–125). Dr. Schaal stated that the pulmonary function results dated October 17, 1981 (tr. 106–111) and taken by Dr. Fritzhand showed less impairment than the test done at Good Samaritan Hospital November 10, 1981. He added that the test done at Good Samaritan February 12, 1980 shows less impairment than the subsequent test just described (tr. 100, 122). Dr. Schaal recommended that the pulmonary function tests be repeated, preferably by a physician and a recognized laboratory not previously used by the plaintiff (tr. 123).

Plaintiff's attorney objected to the use of Dr. Schaal's responses on the grounds that Dr. Schaal did not give any reasons for his answers, noting that the obvious inference that could be drawn from Dr. Schaal's answers are that the pulmonary function tests were inconsistent. The attorney also

noted that plaintiff's condition varies in response to various environmental factors including temperature, dust or pollution and her health, concluding that variation in test results is to be expected (tr. 126–27).

At the hearing where she appeared with her attorney, plaintiff testified that she had been admitted to the hospital in January, 1982 for asthma and a virus infection, her first admission for some time (tr. 37). Plaintiff stated she had trouble sleeping, was short of breath and had a perpetual cough (tr. 38). She undergoes breathing therapy once a week at the hospital (tr. 40). She acknowledged that her condition had improved in the last few years as a result of outpatient breathing therapy (tr. 40). Plaintiff also testified that she takes steam treatments and does positional draining at home (tr. 40–41).

Plaintiff further testified that her condition, including her shortness of breath is exacerbated by extreme temperatures (tr. 42). When she gets short of breath her skin turns blue (tr. 43). She stays in almost all winter and can do very little housework (tr. 44–45). Plaintiff has no clerical skills and has never done anything other than unskilled work (tr. 46). She must go to outpatient therapy once a week during the day in addition to giving herself the treatments three times a day (tr. 47). Her activities have decreased over the last seven years (tr. 49). Plaintiff stated, however, that she required hospitalization far less frequently since starting breathing therapy (tr. 49).

The ALJ concluded that the plaintiff's condition had improved over the last two years and that the evidence did not demonstrate a severe impairment significantly affecting her capacity for work. The ALJ went on, stating that even assuming that plaintiff was restricted to sedentary work she would nonetheless be found not disabled. In determining that the plaintiff could do sedentary work, the ALJ relied on the Physical Capacities Evaluation, noting that Dr. Schiffer's comments indicated that plaintiff could engage in sedentary work as long as it was in a clean environment. In

determining that plaintiff was not disabled he relied upon Rule 201.18, Table No. 1, App. 2, Subparts P and I, Reg. Nos. 4 and 16.

We agree that plaintiff's impairment is not the medical equivalent of one of the impairments listed in App. 1, Subparts P and I of Reg. Nos. 4 and 16. Nevertheless, we find no evidence to support the ALJ's conclusion that plaintiff's condition has improved to the point that her ability to perform basic work-related functions has not been significantly limited since October, 1981.

█ It is, of course, fundamental that the opinion of consulting physicians hired by the SSA are entitled to less weight than those of a claimant's treating physician. *Bowie v. Harris,* 679 F.2d 654, 656 (6th Cir.1982). Dr. Fritzhand used a portable apparatus in testing plaintiff's pulmonary function. Dr. Schaal did not even examine the plaintiff but instead interpreted the medical reports. We agree emphatically with plaintiff's attorney that Dr. Schaal's responses are too brief to be of any use. In addition, they are unsupported by reference to objective medical evidence. Finally, and most telling, Dr. Schaal himself recommended that the plaintiff be given additional pulmonary function tests. The only logical conclusion that one can draw from this recommendation is that he found the tests that were in the record inconsistent and believed that a corroborating test was necessary. Finally, we note that Dr. Schaal's responses went only to the question of whether plaintiff had a listed impairment or the medical equivalent of a listed impairment, not to whether she was disabled under some other standard. Under these circumstances Dr. Schaal's responses should be given minimal, if any, weight.

The ALJ also relied upon plaintiff's statement at the hearing that her condition had improved over the past two years and she had not required hospitalization nearly as often since beginning therapy. That statement taken out of context is insufficient to find her not disabled given the rest

of her testimony and the objective medical evidence. The uncontradicted evidence reveals that plaintiff's activities are significantly limited by her breathing impairment and further that her condition is severely affected by the weather and other environmental conditions over which she can have no control. The testimony as well as the statements of her treating physicians clearly indicate that she must attend outpatient therapy once a week and that she must administer her own home therapy three times each day. In short, we find ample uncontradicted evidence demonstrating that the plaintiff suffers from a severe impairment significantly affecting her capacity for work, and no evidence supporting the ALJ's conclusion that plaintiff can perform basic work-related functions.

The ALJ, however, did go on to consider whether plaintiff would be disabled assuming her condition did impair basic work functions. He found that plaintiff had the residual functional capacity for sedentary work, relying on Dr. Schiffer's Physical Capacities Evaluation. That evaluation does indicate that plaintiff is capable of sedentary work as defined in the Regulations. 20 C.F.R. § 404.1567(a). It is undisputed that plaintiff has a limited education, that her prior work was unskilled, and that she is a younger individual. If no other factors are considered then the medical vocational guidelines, more commonly known as the grid, indeed do dictate a conclusion of not disabled. Rule 201.18, Table No. 1, App. 2, Subparts P and I, Reg. Nos. 4 and 16.

■ However, the introduction to the medical-vocational guidelines emphasizes that the guidelines should not be mechanically applied where the impairment results in non-exertional limitations. The introduction states:

> In addition, some impairments may result solely in postural and manipulative limitations *or in environmental restrictions.* Environmental restrictions are those restrictions which result in inability to tolerate some physical features of work settings that occur in certain indus-

tries or types of work, *e.g.* an inability to tolerate dust or fumes.

Section 200.00(e), App. 2, Subparts P and I, Reg. Nos. 4 and 16 (emphasis added). The record in this case, including the statements of plaintiff's treating physicians and her own testimony, establishes that plaintiff clearly has environmental restrictions. Where an individual has an impairment or combination of impairments that results in both exertional and non-exertional limitations, then the grid is used only as "a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contra-indicated by the non-exertional limitations." Further, "full consideration must be given to all of the relevant facts in the case." Section 200.-00(e)(2), App. 2, Subparts P and I, Reg. Nos. 4 and 16.

The uncontradicted evidence demonstrates that plaintiff's condition results in non-exertional limitations. The restrictions placed on plaintiff's activities by Dr. Schiffer plus plaintiff's testimony as to the effect of extreme temperatures, dust, and pollution are evidence of these limitations. We find, therefore, that, on the undisputed facts of this case, the ALJ erred in mechanically applying the grid.

Evaluating the record as a whole and using the grid as framework, we find that plaintiff's non-exertional limitations so diminish her work capacity that she must be found disabled. Common sense dictates that an individual with plaintiff's limitations, including the time requirements of her outpatient and home therapy, is unlikely to be able to pursue substantial gainful employment. We note, for example, that the plaintiff testified that even when she was working she would miss at least one or two days a week during the cold weather (tr. 47). That plaintiff no longer has to get emergency room treatment or be admitted to the hospital because of asthmatic attacks as often as she did prior to getting the outpatient breathing therapy is simply not a sound reason for concluding that she

is not disabled under the Social Security Regulations.

 Using the test for termination of benefits described at the outset, we conclude that plaintiff has met her burden of proving that her disability is continuing as required by the Social Security Regulations. We find further that the Secretary has failed to meet her burden of demonstrating that there is substantial gainful employment in the economy which this plaintiff can perform.

Accordingly, we conclude that we must and hereby do reverse the ALJ for lack of substantial evidence. This matter is remanded for an award of benefits.

SO ORDERED.