Carol S. DEAN, on Behalf of Laura L. DEAN, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. A. No. C 83–0638 L(A).

United States District Court, W.D. Kentucky, Louisville Division.

June 6, 1984.

Alvin D. Wax, Taustine, Post, Berman, Fineman & Kohn, Louisville, Ky., for plaintiff.

Ronald Meredith, U.S. Atty., Louisville, Ky., for defendant.

## MEMORANDUM OPINION

ALLEN, Chief Judge.

This case is before the Court on the parties' cross-motions for summary judgment. Federal Rule of Civil Procedure 56. Plaintiff Carol S. Dean, on behalf of her daughter, Laura L. Dean, seeks judicial review pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g) of the Secretary's final decision terminating her entitlement to child disability benefits under Supplemental Security Income (SSI) of the Social Security Act, as amended.

The Court initially referred the matter to the Honorable George J. Long, Chief United States Magistrate, for his findings of fact, conclusions of law, and recommendations. 28 U.S.C. § 636(b)(1)(B). The Magistrate issued his report and recommended that the Court sustain the Secretary's decision to terminate benefits. The plaintiff subsequently filed timely objections to the Magistrate's findings and recommendation.

After carefully reviewing the entire record, and for the reasons discussed in this opinion, this Court finds the Secretary's final decision terminating disability benefits for Laura L. Dean is not supported by substantial evidence in the record taken as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Allen v. Califano,* 613 F.2d 139 (6th Cir.1980).

## HISTORY OF ADMINISTRATIVE PROCEEDINGS

The plaintiff first applied for SSI disability benefits for her daughter, Laura L. Dean, then age 7, on January 21, 1977 (Tr. 59–66). In its disability determination notice, dated March 7, 1977, the Social Security Administration (SSA) granted the plaintiff's claim. The disability examiner and reviewing physician both signed the above notice, which included a diagnosis of the daughter's disability: "Emotional problems characterized by anxiety; Borderline to low average intellectual abilities; Severe learning disability" (Tr. 68).

Approximately three years later in March 1980, SSA/SSI notified the plaintiff that her daughter's disability benefits would cease effective April 30, 1980. In the SSA/SSI notice of this planned action, the plaintiff was advised that her daughter:

... first received disability because of a mental impairment and anxiety. Currently, she has received individual therapy and her condition has improved greatly. She still has some trouble with her school work; however, her illness is not severe enough at this time to be considered disabling (Tr. 71).

SSA records indicate that the new disability examiner and reviewing physician determined that the "emotional disorder" of Laura L. Dean, then age 10, was "in remission" (Tr. 69). Reports to the SSA by an otolaryngologist, Dr. Burton J. Cohen, and by a learning disability teacher, Mrs. Francis Todd, as well as a consultative evaluation by a psychologist, Dr. William Ball, apparently formed the basis of this first SSA termination decision (Tr. 101–108).

The plaintiff, however, requested a hearing on the decision to terminate. Administrative Law Judge (ALJ), James L. Simpson, III, conducted the hearing on May 29, 1980, at which the plaintiff, her claimant daughter, an adult neighbor, and a board certified neurologist/psychiatrist appeared and testified for the claimant. In the ALJ's June 27, 1980 report and decision, he found Laura L. Dean continued to be disabled and thus was entitled to continuing SSI disability benefits (Tr. 115–116). Further, he viewed his conclusion so strongly as to state that "recitation of the evidence is unnecessary"; but in his "rationale" for the decision, he did stipulate, *inter alia,*

that the board certified neurologist/psychiatrist had testified that the claimant "met the impairments listed in Sections 111.03 and 112.04 of Appendix 1, Social Security Regulations No. 16, Subpart I" (Tr. 116).

In May 1981, less than eleven months after the above favorable decision, SSA again notified the plaintiff of its decision to investigate whether her daughter, now age 11, remained disabled (Tr. 119–122). Approximately three and one-half months later, in an SSA/SSI notice to the plaintiff dated September 11, 1981, plaintiff was advised of the following:

> Based on the evidence in this case, and including review by a physician of an agency of the State in which the child lives, it has been found that the child was not disabled effective 7/81.... Your child has had emotional problems and learning difficulties and staring spells which interfered with normal activities for a child her age. The evidence shows that at the present time her condition is much improved (Tr. 125).

SSA records once again reflect that a new disability examiner and reviewing physician viewed Laura L. Dean's "emotional disorder" as "in remission" (Tr. 123). Outpatient records from Norton Childrens Hospital covering a period from February 5, 1981 through May 20, 1981, as well as a consultative evaluation and report dated July 30, 1981 by a psychiatrist, Dr. Karen Fisher, apparently formed the basis of this termination decision (Tr. 124; 131–138).

The plaintiff, however, again requested a hearing (Tr. 127), which occurred approximately five months later on January 26, 1982 before Administrative Law Judge Lehman Sadler (Tr. 32). At this hearing, only the plaintiff testified, although her daughter, now age 12, was present (Tr. 32). At the conclusion of the hearing, the ALJ permitted the record to remain open in order for plaintiff's counsel to submit additional documentary evidence (Tr. 56). On June 14, 1982, three more documents were entered into evidence, and the record then was closed (Tr. 57).

In the ALJ's February 4, 1983 report and decision, he found the plaintiff's daughter, now age 13, no longer disabled as of September 30, 1981; and he, therefore, denied the plaintiff's claim for continuation of SSI disability benefits (Tr. 9; 13). In his findings he stated that the "evidence fails to substantiate any impairment or impairments that meet or equal the criteria of any impairment listed in Appendix 1 of Subpart B of Social Security Regulations No. 4" (Tr. 12). Further, in discussing the issues of this claim, he stated:

> It is not necessary for the claimant's impairment(s) to have improved for disability to be [sic] ceased. Rather, the question to be resolved is whether the claimant's impairment(s) precluded substantial gainful activity at the time disability was found to have ceased (Tr. 9–10) (emphasis added).

Following this adverse decision by the ALJ, the plaintiff requested a review by the Hearings and Appeals Council (Tr. 3–7). On May 23, 1983, the Council denied the plaintiff's request for review, and the ALJ's decision became the final decision of the Secretary (Tr. 2). The plaintiff then timely appealed to this Court for review of this final administrative decision.

## STANDARD OF REVIEW

This Court has jurisdiction to review the Secretary's decision pursuant to 42 U.S.C. § 1383(c)(3), which provides that such review shall be the same as that provided in 42 U.S.C. § 405(g). Therefore, the sole question before this Court is whether the Secretary's decision is supported by substantial evidence in the record taken as a whole. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980), citing *Futernick v. Richardson*, 484 F.2d 647 (6th Cir.1973).

The Supreme Court has defined the statutory substantial evidence standard as evidence which is "more than a mere scintilla ... [and which is] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), citing

*Consolidated Edison v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1053 (6th Cir.1983).

In exercising this limited review function, the Court must review the entire record, *Stamper v. Harris,* 650 F.2d 108 (6th Cir.1981), considering evidence which both supports and detracts from the ALJ's and Secretary's final decision. *Beavers v. Secretary, HHS,* 577 F.2d 383 (6th Cir. 1978). However, resolution of conflicting evidence and questions of credibility are solely within the purview of the Secretary. *Wokojance v. Weinberger,* 513 F.2d 210 (6th Cir.1975).

Although the Secretary's fact findings are conclusive when supported by substantial evidence, *Faison v. Secretary, HHS,* 679 F.2d 598 (6th Cir.1982) (per curiam), they will not be insulated by the substantial evidence test if the fact finder failed to apply proper legal standards in making his or her determination. *Branham v. Gardner,* 383 F.2d 614 (6th Cir. 1967). *Accord, Boyd v. Heckler,* 704 F.2d 1207 (11th Cir.1983).

Finally, it must be noted that the standard in termination cases, just as in all Social Security cases, is whether the Secretary's decision is supported by substantial evidence. *Mullins v. Secretary, HHS,* 680 F.2d 472 (6th Cir.1982), citing *Myers v. Richardson,* 471 F.2d 1265 (6th Cir.1972). Likewise, the ultimate burden of proof (risk of nonpersuasion) in termination cases remains with the claimant. *See, e.g., Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Myers v. Richardson, supra.*

### PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S FINDINGS AND RECOMMENDATION

Counsel for the plaintiff argues in both his objections and his summary judgment memorandum that the Secretary's decision terminating the claimant's child disability benefits is not supported by substantial evidence in the record. Citing to recent decisions by the Fourth, Seventh, Ninth, and Eleventh Circuits, *Dotson v. Schweiker,* 719 F.2d 80 (4th Cir.1983); *Cassiday v. Schweiker,* 663 F.2d 745 (7th Cir.1981); *Patti v. Schweiker,* 669 F.2d 582 (9th Cir. 1982), *see also Heckler v. Lopez,* 463 U.S. 1328, 104 S.Ct. 10, 11–12, 77 L.Ed.2d 1431 (Rehnquist, Circuit Justice, 1983); *Iida v. Heckler,* 705 F.2d 363 (9th Cir.1983); and *Simpson v. Schweiker,* 691 F.2d 966 (11th Cir.1982), counsel for the plaintiff maintains that the Secretary cannot terminate benefits without producing evidence that the recipient's medical condition has improved since he or she previously was declared disabled. Significantly, the Sixth Circuit recently has ruled as in the above cited cases. *Haynes v. Secretary, HHS,* 734 F.2d 284 (6th Cir.1984). The Secretary, however, denies such a requirement.

Plaintiff's counsel cites *Patti v. Schweiker, supra,* a case also involving termination of disability benefits after a prior ruling of disability by an ALJ, for the legal standard governing such cases. The Ninth Circuit held that the applicable standard involved the "familiar principle that a condition, once proved to exist, is presumed to continue to exist" absent proof to the contrary. *Patti, supra* at 586–587. *Accord, Haynes v. Secretary, HHS, supra* at 288.

According to these various circuits and lower federal court opinions, although the claimant retains the ultimate burden of persuasion in a termination case, a prior ruling of disability after a hearing and decision by an ALJ gives rise to a presumption that the disability continues to exist. The Secretary, therefore, is required to come forward with evidence showing that the claimant's condition has improved in the interim. Once the Secretary comes forward with such evidence, then whether that evidence has met the Secretary's burden of production is a judgment to be made initially by the Secretary; and on appeal, such a judgment can be overturned only if it fails to meet the substantial evidence standard. *Patti, supra* at 587; *Haynes, supra* at 287–288.

Significantly, the administrative factual setting of *Patti* is quite similar to the instant case. As noted earlier in this opinion, the plaintiff's daughter initially received SSI disability benefits in 1977; but three years later, SSA notified the plaintiff that her daughter's payments would cease. A subsequent hearing and decision by an ALJ, however, overturned the Secretary's termination decision. Less than eleven months after the favorable ALJ decision, SSA again notified the plaintiff that her daughter's disability was under investigation; and four months later the benefits were terminated. This time a different ALJ upheld the Secretary's termination decision. The procedural history of *Patti* is almost identical to the above chain of events.

■ In using the evidentiary principle embodied in Federal Rule of Evidence 301, the *Patti* Court emphasized that placing a production burden on the Secretary to "meet or rebut" the presumption of a continuing disability is consistent with the Secretary's own regulations at C.F.R. § 146.-1455 (1981). *Patti, supra* at 586–587. These regulations provide that a disability decision by an ALJ is "binding on all parties to the hearing" unless one or both of the parties seek one of the specified routes of appeal. In *Patti* and in *Haynes,* as in the case before this Court, neither the Secretary nor the claimant sought to disturb the prior ALJ's determination of disability. Hence, the presumption of disability exists at a subsequent ALJ hearing.

■ Counsel for the plaintiff urges this Court to exercise our review function in light of the evidentiary principle and reasoning enunciated above. After carefully reviewing these decisions, this Court believes their application to the instant case is both proper and appropriate.

## A. EVIDENCE IN THE RECORD

In examining the record, neither the ALJ nor the Magistrate applied the evidentiary principle outlined above in evaluating or in reviewing the evidence. Both did state, however, that the plaintiff's daughter was no longer disabled because of her failure to establish that she meets some impairment or impairments listed in Appendix 1, Subpart B, Social Security Regulations (Tr. 12; Magistrate's Report, Conclusions of Law, Para. 7).

Counsel for the plaintiff argues that the plaintiff's daughter continues to be disabled under either § 111.03 (Minor Motor Seizure Disorder) and/or § 112.04 (Functional Nonpsychotic Disorder). He bases this argument on the ALJ decision in 1980, wherein the ALJ determined that the claimant had a continuing disability under both of these regulatory sections. In reviewing the record, it is clear that this ALJ based his decision on the testimony at the hearing of a medical advisor, a board certified neurologist/psychiatrist whom the government had selected to evaluate the claimant. At the 1980 hearing, this medical advisor testified that the plaintiff's daughter met the requirements of both of the above-cited impairments. Counsel for the plaintiff thus argues that at the instant case hearing in 1982 a presumption of the claimant's disability existed, and the Secretary failed to overcome that presumption by substantial evidence.

The record contains voluminous medical documentation dating back to 1976 and continuing up to the last ALJ decision denying continuation of benefits. Plaintiff's daughter was first evaluated in March 1976 at the age of 6 years old by the University of Louisville School of Medicine, Department of Pediatrics, Child Evaluation Center. This evaluation disclosed that despite a full scale I.Q. of 93, the plaintiff's daughter had perceptual motor problems and "emotional and behavioral reactions characterized by interpersonal withdrawal, anxiety and feelings of insecurity; learning problems of [the central nervous system] and/or emotional etiology" (Tr. 87–95). The physicians at the Child Evaluation Center "strongly" recommended "a highly structured academic setting" and some form of counseling/therapy (Tr. 96). Subsequent medical and psychological reports in the record reveal that these recommen-

dations were followed. Further, also noted earlier in this opinion, in March 1977 the plaintiff's daughter was granted SSI disability benefits due to her "[e]motional problems characterized by anxiety; [b]orderline to low average intellectual abilities; and [s]evere learning disability" (Tr. 68).

While still participating in full-time learning disability classes as well as individual therapy, SSA terminated the claimant's benefits in 1980; but as also previously noted, after a hearing and testimony by a government selected neurologist/psychiatrist, the ALJ ruled that the plaintiff's daughter continued to be disabled under the regulations. Finally, eleven months after that favorable ruling, SSA again notified the plaintiff of its intent to terminate. This second termination ended with the instant case ruling by a new ALJ that the claimant did not meet the disability requirements of § 111.03 or § 112.04.

In examining the evidence presented at the second ALJ hearing (as well as subsequent to that hearing), the following should be noted. First, an EEG performed in April 1981 at Nortons Childrens Hospital disclosed a normal waking and sleeping mode; but the clinical impression was described as "absences—petit mal type?" (Tr. 133) and the medication Tridione was to be continued. The ALJ noted in his findings that with this medication "good seizure control" existed. However, in May 1981, the medication was withdrawn because the claimant was sleeping in class (Tr. 10). The claimant was then placed on Depakene, but for unknown reasons this medication was withdrawn after one month (Tr. 10–11). At the time of the hearing, the claimant was not taking prescribed medication for her "absences" (Tr. 11).

In terms of the claimant's education, at the time of the hearing she continued to be enrolled in disability learning classes. Her grades for the 1981–1982 year reflect that she failed all of her subjects except one, math; and she received only a D in that course. (Tr. 11; 140). Interestingly, the ALJ characterized the claimant's academic performance as revealing "some learning difficulties" (Tr. 11).

The Child Evaluation Center re-examined the claimant in November 1981. The results of this examination were submitted to the ALJ in June 1982 after the hearing. According to this report, the claimant's full scale I.Q. was 81, again reflecting "borderline to low average range of ability" (Tr. 143–144). The evaluation also indicated continuing problems with "anxiety, insecurity and difficulty handling anger and aggression" (Tr. 144). Among the Center's recommendations were continued disability learning classes and therapy (Tr. 144). In discussing this evaluation, the ALJ stressed one of the examiner's comments that the claimant was friendly and outgoing, but he failed to mention the ultimate diagnosis and recommendations (Tr. 12).

In terms of a medical consultation, Dr. Karen F. Fisher, a child psychiatrist, examined the claimant in July 1981 at the request of the government. Dr. Fisher candidly admitted that despite all of her efforts, she was unable to engage the claimant, then age 11, in any conversation. Nonetheless, following her three page report, Dr. Fisher concluded that the claimant possesses "some type of learning disability" and "seizure disorder, probably mal" (Tr. 137). In terms of a prognosis, Dr. Fisher stated:

> [It] will depend upon the degree of disability that she has. Her ability to relate is greatly impaired as is evidenced in our interview, and this will be a further handicap to her. I do not think she can manage her own benefits (Tr. 137).

In discussing this consultative examination, the ALJ characterized it as "not very enlightening": (Tr. 11). Further, he noted that Dr. Fisher had mentioned that the claimant's withdrawn and flat affect during the interview might have been due to seizure medication; and for this reason, he further implied that the consultation was not useful. Significantly, the Magistrate also found Dr. Fisher's report of "limited usefulness as she was unable to get the

child to talk" (Magistrate's Report, Findings of Fact, Para. 6).

In reaching his decision denying continued benefits, the ALJ stated at the end of his evaluation of the evidence that "a physician designated by the Secretary has determined that the claimant's impairments do not meet or equal the criteria of any listed impairment, and the undersigned [ALJ] agrees with this conclusion" (Tr. 12). Significantly, it must be noted that according to the Magistrate's Report, the ALJ's reliance on this unnamed physician refers to page 124 of the Transcript. A review of page 124 reveals only that on September 10, 1981, a doctor initialed the box designated "Review Physician DDS," wrote the above cited statement, and cited to two pieces of evidence, namely Dr. Fisher's consultative examination and Nortons Childrens Hospital Outpatient Records of February through May 1981. Further, the record completely fails to disclose this physician's qualifications.

### B. CONCLUSION

The record reveals that the plaintiff's daughter has received extensive treatment for both her nonpsychotic disorder and mild retardation. Clinical testing by the Child Evaluation Center also reveals basically the same results between the 1976 testing and the 1981 testing, namely, emotional reactions characterized by withdrawal, anxiety, and insecurity feelings. Dr. Fisher's encounter with the claimant confirmed the withdrawal aspect, but both the ALJ and the Magistrate discounted her findings.

Counsel for the plaintiff argues that even if the claimant no longer meets § 111.03 Minor Motor Seizure, the Secretary presented no evidence to show improvement in the claimant's nonpsychotic disorder. This aspect of the claimant's disability was found to exist by the ALJ in 1980, who relied on the testimony at the hearing of a board certified neurologist/psychiatrist medical advisor. During the instant case's second hearing, however, a medical advisor did not appear. Indeed, as noted above, the only reference to a medical advisor in this case is the initialed form by a review physician whose qualifications are unknown and who could not have reviewed all of the evidence since he or she made their "review" prior to the evidence submitted after the hearing. Counsel argues, therefore, that the second ALJ erred in giving this form such weight.

 After thoroughly reviewing all of the evidence in this case, this Court finds that the Secretary failed to show by substantial evidence in the record that the claimant's disability had improved since the prior ALJ decision continuing disability payment. Therefore, a judgment in accordance with this opinion will be entered this day.