Oscar PEREZ, Plaintiff, Appellant,

v.

**SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE,**
Defendant, Appellee.

No. 79–1208.

United States Court of Appeals,
First Circuit.

Submitted Feb. 7, 1980.

Decided May 16, 1980.

Luis M. Chaves Ghigliotty, Arecibo, P. R., on brief, for plaintiff, appellant.

Jose A. Quiles, U. S. Atty., San Juan, P. R., William Kanter, Atty., Dept. of Justice, Frank V. Smith, III, Acting Atty. and Barry J. Reiber, Asst. Regional Atty., Dept. of Health, Ed. and Welfare, Washington, D. C., on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

After working for many years as a plumber and then as a construction supervisor, Oscar Perez applied for Social Security disability benefits in 1977, at age 47. An administrative law judge (ALJ) agreed that Perez's back, hernia, and possible heart conditions prevented him from returning to his former employment, but nevertheless found that Perez was able to perform certain light and sedentary jobs enumerated by a vocational expert. Adopting the ALJ's decision, the Secretary of Health, Education and Welfare denied benefits. The question on appeal is whether the Secretary's decision was supported by substantial evidence. 42 U.S.C. § 405(g).

■ Perez attacks the Secretary's decision primarily on the ground that it was "based exclusively on the evaluation of one non-treating physician designated by the Secretary, who examined [him] only once, to the disregard of overwhelming medical and clinical evidence of various treating physicians." It is true that several doctors who treated Perez at the Veterans Administration Hospital and the Dr. Susoni Hospital diagnosed angina, a back ailment that affected his right leg,[1] and an inguinal hernia, and prescribed exercises, a corset, and medication including nitroglycerin and pain killers.[2] Furthermore, the two doctors from Dr. Susoni Hospital opined that Perez could not work. Nevertheless, we think it was within the Secretary's province to accord greater weight to the report received from Dr. Melvyn Acosta Ruiz, an internist designated by the Secretary. *See Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 38 L.Ed.2d 842 (1971).

First of all, Dr. Acosta's findings were substantiated. His finding that there was "[n]o clinical evidence of classical angina pectoris or heart failure" was made on the basis of a physical examination and an electrocardiogram; he also noted the results of a Master's test taken at the Veterans Administration Hospital. His comment that Perez's hernia was correctible by surgery apparently followed from his judgment that Perez had no serious heart condition that would preclude surgery.[3] His conclusion that, even with chronic paravertebral lumbar fibromyositis, Perez had a full although painful range of motion in his back, was premised on the results of a physical examination during which he noted no muscle spasm, swelling, tenderness, or deformity of the back, and no atrophy, swelling, tenderness, or deformity of the extremities, and on x-ray results showing only mild osteoarthritis of the lumbar spine. Second, unlike the conclusory statements of disability made by the two Dr. Susoni Hospital doctors, Dr. Acosta's evaluation of Perez's residual functional capacity was detailed and accompanied by specific clinical and laboratory findings. *See* 20 C.F.R. § 404.1526 (1979). Although Dr. Acosta's evaluation strikes us as a bit sanguine, considering his acknowledgement that Perez's back condition is painful, we cannot say that the evaluation was baseless and that the Secretary was obliged to disregard it. Finally, Dr. Acosta's opinion is consistent with some of the other evidence of record, *e. g.*, electrocardiograms that were taken at the Veterans Hospital and appear to have been read there as "within normal limits," and observations by agency interviewers that Perez appeared to be in no distress although he looked older than his years.[4]

In short, while there was medical evidence and testimony from Perez and his daughter (a nurse) upon which a finding of disability could have been premised, we do not agree with Perez that the evidence supporting his claim was "overwhelming" and

1. Perez's back condition was variously described as a paravertebral muscle spasm, lumbosacral sprain, fibromyositis, and degenerative joint disease. An x-ray of his back disclosed moderate degenerative changes and spur formations, and an electromyographic examination of his right leg was abnormal, consistent with L5–S1 radiculopathy. Veterans Administration doctors noted atrophy and a limitation in movement of Perez's right leg.

2. There are also indications that Perez was bothered by headaches, dizziness, and a respiratory problem, but these conditions have not been emphasized by Perez and we see little to indicate they were disabling.

3. Dr. Acosta noted that in March 1977 elective surgical repair of the hernia was postponed because Perez reported chest pain after being medicated for the operation. It remains unclear from the record whether the operation was ever rescheduled, but there are certainly no indications that surgery was ruled out permanently.

4. Perez makes much of the fact that Veterans Administration doctors observed muscle spasm in his lower back and tenderness, atrophy, and limited movement in his right leg, while Dr. Acosta did not. This does not mean that the Secretary was obliged to reject Dr. Acosta's appraisal. Perez also argues that Dr. Acosta noted, contrary to Veterans Administration Hospital records, that Perez did not smoke. Even if Dr. Acosta were mistaken in this regard, this would not severely undermine his diagnosis.

virtually compelled a finding of disability. In other words, we think that Dr. Acosta's report and other information of record amounted to substantial evidence, *i. e.,* "such relevant evidence as a reasonable mind might accept to support a conclusion," that he was not disabled. *Richardson v. Perales, supra,* at 401, *quoting from Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). This case strikes us as different from others, cited by Perez, in which a single doctor's report in conflict with considerable other evidence was found insufficient to sustain the denial of benefits. *Hayes v. Gardner,* 376 F.2d 517, 520–21 (4th Cir. 1967) (report by doctor who had never examined claimant); *Miracle v. Celebrezze,* 351 F.2d 361, 372–73 (6th Cir. 1965) (report by doctor whose estimate of 20% disability conflicted with his own findings concerning claimant's back ailment, and who erroneously stated claimant had been wearing a back brace for one year instead of ten); *Sebby v. Fleming,* 183 F.Supp. 450, 454 (W.D.Ark.1960) (report that acknowledged claimant's heart condition and said it could be class II or III but stated that claimant "should be able to do some work"). We also regard Dr. Acosta's report as more informative about claimant's fitness for work than the clinical notes we recently found wanting in *Currier v. Secretary of Health, Education and Welfare,* 612 F.2d 594, 596–97 (1st Cir. 1980), (psychiatrist did not explain the degree of claimant's mental impairments or the reason for his conclusion that claimant was employable).

■ Perez also criticizes the Secretary for considering the fact that he collected unemployment benefits until September, 1977, while allegedly disabled. At the administrative hearing the ALJ asked Perez whether to get unemployment insurance he had to say he was willing to work if offered a job. Perez responded to the effect that he had no income so had to state he would accept work, and further testified that when asked if he had gone looking for a job he said yes. In his opinion, the ALJ said the fact that Perez collected unemployment benefits indicated Perez was "ostensibly ready, willing, and able to work." It is not clear that the ALJ saw Perez's collection of unemployment benefits as positive evidence he could work; it may be that the ALJ thought the evidence affected Perez's credibility. In any event, although we have reservations about the significance of such evidence, we are reluctant to say that a claimant's decision to hold himself out as able to work for the purpose of receiving unemployment benefits may never be considered on the issue of disability. *But see Bartell v. Cohen,* 445 F.2d 80, 82 (7th Cir. 1971), cited by Perez (evidence that claimant attempted to return to work and when refused did not seek other work bore on motivation rather than disability and was contradictory in any event). At least where there was medical and vocational evidence supporting the denial of benefits and claimant's receipt of unemployment benefits does not appear to have been the decisive factor in the denial of benefits, we are not inclined to overturn the Secretary's decision. *Compare Flores v. Department of Health, Education and Welfare,* 465 F.Supp. 317, 321–26 (S.D.N.Y.1978) (ALJ relied almost exclusively on claimant's receipt of unemployment benefits and it was unclear whether claimant knew that he was holding himself out as able to work in accepting unemployment benefits).

■ Finally, Perez points out that certain pages of documentary evidence were not included in the certified transcript of the administrative proceedings. It is nevertheless apparent from the ALJ's decision that he considered such evidence. Moreover, counsel supplied missing pages to the district court and this court. Although it might have been preferable for the Secretary to have transmitted such documents in a supplemental certified transcript, the procedure followed allowed for full and fair consideration of Perez's claims. Perez himself does not contend otherwise.

*Affirmed.*