Floyd G. JUSTICE, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. C–82 6930 SW.

United States District Court, N.D. California.

Feb. 9, 1984.

Joseph P. Russoniello, U.S. Atty., John F. Barg, Chief, Civ. Div., Deborah M. Seymour, Asst. U.S. Attys., San Francisco Cal., for defendant.

Ron Green, Clearlake, Cal., for plaintiff.

ORDER AND MEMORANDUM GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

I. INTRODUCTION.

Plaintiff Floyd G. Justice ("Appellant") brings this action pursuant to 42 U.S.C. § 405(g), for review of a final decision of the Secretary of Health and Human Services that appellant's disability ceased in September 1981. Both parties now move for summary judgment.

After reviewing the hearing transcript, the pleadings of the parties herein, and the medical records produced before the Administrative Law Judge (ALJ), we find that the decision of the Secretary was supported by evidence substantial enough to rebut the presumption of appellant's continuing disability, and, accordingly, IT IS ORDERED that the Secretary's motion for summary judgment is GRANTED.

FACTS

Appellant Justice is fifty years old. He has the benefit of three years of high school education, and has had a varied work experience, having been a member of the armed forces, a water-well driller, a

service manager in a car dealership, and proprietor of a motorcycle dealership.

Appellant's claim arises from a cerebral aneurism which he has suffered since 1955. This condition is, in appellant's case, inaccessible to surgery. In the past twenty-eight years, appellant's aneurism has resulted in two subarachnoid hemorrhages, one occurring in 1955, and one in 1974. After each of these episodes, appellant was declared disabled.

Appellant spent some two or three years in a state of disability after his first hemorrhage, but then returned to work. He has not yet returned to work after the 1974 hemorrhage, claiming that the continuing effects of the recent hemorrhage, including headaches, memory loss, and a feeling of exhaustion, are severe enough to prevent him from engaging in any gainful activity.

In March 1981, the Secretary of Health and Human Services notified appellant that his physical and mental condition were such that his entitlement to a period of disability would cease in September 1981. Appellant then requested a hearing before an ALJ in order to contest this determination. This hearing was held on April 26, 1982.

The ALJ determined that the Secretary's decision was correct under the regulations to the Social Security Act as promulgated by the Secretary, and issued a statement of decision to that effect on June 30, 1982. The Appeals Council declined to review the ALJ's decision, pursuant to 20 C.F.R. § 404.970. Appellant then sought review here in a timely fashion.

ISSUES ON APPEAL

This appeal presents two issues. First, appellant maintains that the ALJ applied the wrong legal standard in evaluating this case. Specifically, he argues that the ALJ failed to consider the legal standard set forth in *Patti v. Schweiker*, 669 F.2d 582, 586–587 (9th Cir.1982) and *Finnegan v. Matthews*, 641 F.2d 1340, 1347 (9th Cir. 1981), which requires that, in cases of chronic and continuing disability, the Secretary rebut a presumption that the disabling condition continues to exist by submitting substantial evidence of improvement in the medical condition of the plaintiff-appellant. Second, appellant urges that there was no substantial evidence to support the determination of the ALJ, in that appellant's treating physician testified that he "should not work" (Tr. 94–95), and only non-treating physicians testified to the contrary.

ANALYSIS

A. The "Patti" Standard

■ As appellant suggests, *Patti v. Schweiker*, 669 F.2d 582 (9th Cir.1982), and, more recently, *Lopez v. Heckler*, 713 F.2d 1432 (9th Cir.1983), compel the Secretary and the ALJ to apply the legal standard noted above in regard to cases of continuing, chronic disability. See *Patti, supra*, at 586–587, and *Lopez, supra*, at 1438. That is, the ALJ should view the evidence in such a way that the Secretary must overcome a presumption that the appellant's disability continues to exist; the Secretary may do so by producing some evidence of material, medical improvement in the appellant's condition.

■ The ALJ's decision does not specifically cite *Patti* or *Finnegan*, nor does it mention an evidentiary presumption in favor of the appellant. Nonetheless, a careful review of the "Statement of Decision" contained in the record discloses that the ALJ did properly evaluate the evidence before him.

In his decision, the ALJ recites, at length, the history of plaintiff's physical condition. (Tr. 7–11) Moreover, in justifying his decision, the ALJ describes in great detail the recent and objective medical evidence which tended to rebut plaintiff's claim of continuing disability. (Tr. 8–11) For example, the ALJ notes that a "neurologic evaluation [in 1979] of the claimant's cerebella and cerebral function was considered to be excellent" (Tr. 8); and that "upon neurologic evaluation by Dr. Michael Kasman, on September 18, 1981, the claimant was reported to have no fixed neurological abnormalities except for some decreased recent memory." (Tr. 9)

This is exactly the sort of evidentiary examination compelled by *Patti*, which states:

> a prior ruling of disability can give rise to a presumption that the disability still exists ... [and once such a presumption is established] it impose[s] on the Secretary a burden to come forward with evidence that [a claimant's] condition has changed. *Patti*, at 586–7.

Here, the ALJ was well aware of the chronic nature of the plaintiff's condition, and properly emphasized the objective medical evidence of the plaintiff's improvement when deciding the case. (Tr. 7–11) Furthermore, the ALJ's examination of the plaintiff at the evidentiary hearing illustrates his concern with plaintiff's improvement, or lack thereof. (Tr. 33–40) The ALJ rightly asked questions concerning plaintiff's most recent medical history, to discover whether or not plaintiff's condition had improved sufficiently to allow him to engage in substantial gainful activity. (Tr. 33–40)

■ Lastly, the Secretary did present substantial evidence of a material improvement in appellant's condition, in the form of a neurological examination by Dr. Michael Kasman, a specialist in neurology, and a psychological examination by Sheila Ripke, a registered clinical psychologist. Both of these examiners found that appellant's condition was essentially normal,[1] as had an earlier examination by W.S. Ekren of Santa Rosa Hospital. (Tr. 186)

These various reports are the sort of evidence required by *Patti* and *Lopez*, to rebut the evidentiary presumption in appellant's favor. They are not the sole evidence relied upon by the Secretary however. An ECG taken in early 1978 showed plaintiff's condition to be normal. (Tr. 180–183) And in 1979, plaintiff stopped, of his own accord, visiting his treating physician at two month intervals, and ceased taking the medication prescribed to him.

For these reasons, we conclude that the standards of *Patti*, *Finnegan*, and *Lopez* were satisfied. The Secretary *did* submit medical evidence (both objective tests and medical opinions) of the plaintiff's improvement. The ALJ understood the chronic nature of plaintiff's malady, and examined the record closely for evidence of plaintiff's current condition. He found ample evidence of recent improvement in the medical records of the plaintiff, and this evidence was corroborated by the plaintiff's behavior. Hence, we cannot say the ALJ interpreted the evidence incorrectly.

### B. Was There Substantial Evidence?

■ We begin by noting the narrow standard of review in cases like the one before us. The ALJ, not the court, must weigh the evidence and determine the outcome of the case accordingly. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). If there is substantial evidence to support the Secretary's decision, that decision must be upheld, even if there is evidence to the contrary. *Torske v. Richardson*, 484 F.2d 59 (9th Cir.1973), *cert. denied, Torske v. Weinberger*, 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237. This court may not try the matter *de novo*, but may only examine the record to be sure that the Secretary's decision is based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales, supra*, 402 U.S. at 401, 91 S.Ct. at 1427.

■ The appellant herein argues that the Secretary presented no substantial evidence of his fitness, because only non-treating physicians testified that he was well enough to work and/or manage his own funds, whereas his treating physician adjudged him disabled. In this regard, he cites various cases from other circuits, including *Aubeuf v. Schweiker*, 649 F.2d 107, 112, 114 (2d Cir.1981), and *Hancock v. Secretary of HEW*, 603 F.2d 739, 740 (8th

---

**1.** Dr. Kasman's report (dated 9/18/81) states that "at the present time he [appellant] has no fixed neurological abnormalities ... except for decreased recent memory," (Tr. 196), and Ms. Ripke found (on 9/8/81) that Mr. Justice "might be able to handle a part-time situation with support." (Tr. 192)

Cir.1979). After a review of the cases cited by appellant, we conclude that the rules established therein are essentially the same as that of the Ninth Circuit and this District; namely, that the testimony of a non-treating physician, or the the testimony of a consulting physician, who merely reviews the claimant's records, cannot, alone, constitute substantial evidence. *Murray v. Heckler*, 722 F.2d 499 (9th Cir.1983); *Karp v. Schweiker*, 539 F.Supp. 217 (N.D.Cal. 1982); *Stewart v. Harris*, 509 F.Supp. 31, 34–5 (N.D.Cal.1980).

We find the concerns underlying this rule are inapposite here for the following reasons. The above rule is designed to protect claimants from testimony given by physicians who have not had an opportunity to examine the claimants fully (many times, consulting physicians merely review the claimant's records), or to protect claimants from testimony given by physicians, appointed by the Secretary, who are not certified experts in the malady from which the claimant purports to suffer.

■ Neither of these rationales applies to the present case. Dr. Kasman had an opportunity to examine the claimant, and performed a variety of medical tests on him. (Tr. 195–6) The same can be said of Ms. Ripke. (Tr. 191–2) Moreover, Dr. Kasman and Ms. Ripke are both experts in the field of plaintiff's malady,[2] while the treating physician in this case, Dr. Bradley, is a general practitioner. Where certified experts in the area of a claimant's malady have fully examined a claimant whose treating physician is not such an expert, we do not see any reason for disregarding their testimony, or viewing such testimony as less than substantial evidence. This is particularly so where, as here, the plaintiff's physician had not seen the plaintiff in six months, and submitted only a brief, conclusory letter at the hearing.[3] (Tr. 196)

■ Lastly, we find it significant that the bulk of objective medical evidence for the period after 1977 showed that the claimant's co-ordination and mental capacity were generally normal, and that his symptoms were not severe. (Tr. 179–196) And the record discloses that the claimant was able to engage in various activities (e.g. playing cards, taking walks), and was not unable to perform some kinds of light, sedentary work as defined by the Social Security Act (Section 223(d)(2)(A), 42 U.S.C. § 423(d)(2)(A), and the regulations found at 20 C.F.R. 404.1501 *et seq.* (1981)). (See Tr. 154–160)

A careful review of the case law in this area reveals that the cases cited by plaintiff-appellant, and those decided in the Ninth Circuit, do not compel a contrary result. In *Karp, supra*, the consulting physician on whose testimony the ALJ relied never examined the plaintiff. *Karp*, at 219. A similar problem arose in *Aubeuf*. In *Aubeuf*, an ALJ's decision was reversed when that decision rejected the plaintiff's complaints of physical pain solely on the basis of plaintiff's medical records. *Aubeuf*, at 112. In *Hancock* and *Stewart*, the opinions of consulting physicians were held not to constitute substantial evidence where those opinions derived from brief,

---

**2.** Dr. Kasman is a member of the American Board of Psychiatry and Neurology, and Ms. Ripke is a registered psychologist.

**3.** Dr. Bradley's letter is dated April 5, 1982, and reads:

> Dear Floyd,
> This is just to bring us up to date on your disability. I last saw you on 9/10/81. For many years you have had a cranial aneurysm which gives you headaches. Your history goes back to 3/29/55 when your diagnosis in the military was a subarachnoid hemorrhage due to congenital arterial anomoly between the straight sinuses and both posterior cerebral arteries. You were told that this was inoperable. I saw you in July of 1956 with headaches and you told me that you did have another hemorrhage in January of 1974 in Sacramento. You were taking pain medication for some time and I understand now that you just decided that you would prefer not to take it. I realize that now you are taking non-prescription medication. As you have told me that you can't function more than an hour or two and your memory is so poor that you can't keep up with what is going on.
> Sincerely,
> [signature]

cursory examinations of a claimant. *Hancock*, at 740; *Stewart*, at 34–5. Thus, none of the above cases is wholly apposite here. The record before us demonstrates that the opinions of Dr. Kasman and Ms. Ripke were the result of actual physical examinations of the plaintiff which were lengthy and complete, unlike those disfavored above.

A recent Ninth Circuit case, *Murray v. Heckler*, 722 F.2d 499 (1983), also requires a careful review here. In that case, the findings of an examining, consulting physician were identical to those of the claimant's treating physician. *Murray*, at 501. Only the opinions of the two physicians differed. *Id*, at 501. And the opinion of the consulting physician was neither detailed, nor specific: it was merely a form provided by the Secretary, which the consulting physician filled out by making check-marks in the boxes provided by the form. *Murray*, at 501. The Court also found it significant that the consulting physician's opinion was not accompanied by specific clinical and laboratory findings. *Id*, at 501. For these reasons, the Court found that the consulting physician's testimony did not constitute substantial evidence to rebut the opinion of the plaintiff's three treating physicians.

None of the above weaknesses is apparent in the reports of Dr. Kasman and Ms. Ripke. These reports are detailed and complete, and are based on substantial clinical and laboratory tests. (Tr. 191–196)

Indeed, a First Circuit case cited in *Murray*, and then distinguished on its facts, is a great deal like the case before us. In *Perez v. Secretary of HEW*, 622 F.2d 1 (1980), the First Circuit held that a non-treating physician's findings, which were much more detailed than those of the treating physician, could be substantial evidence of non-disability, particularly where the non-treating physician's findings were the result of clinical and laboratory tests, and were substantiated by other evidence in the record. *Perez*, at 2, 3.

We find the reasoning of *Perez* persuasive in the instant case, which, we em-phasize, should be read in light of its specific facts. See *Perez*, at 2, 3, which distinguishes several cases cited by appellant (and others not cited); and see *Murray*, at 501, 502. Thus, we do not find that the decision of the ALJ was unsupported by substantial evidence.

CONCLUSION

An examination of the record as a whole reveals that the ALJ's decision applied the correct legal standard, and that his decision was based on such evidence as a reasonable mind would accept as sufficient to support his conclusion. Therefore, IT IS ORDERED that the Secretary's motion for summary judgment be GRANTED.