**Florence BOSCHER**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services.**

**Civ. A. No. 81–2916.**

United States District Court, E.D. Pennsylvania.

March 28, 1984.

Michael J. Campbell, Delaware County Legal Assistance Ass'n, Chester, Pa., for plaintiff.

Serena H. Dobson, U.S. Atty., Edward S.G. Dennis, Jr., Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LOUIS H. POLLAK, District Judge.

This is the second appeal filed by plaintiff Florence Boscher under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Plaintiff again seeks district court review of the final decision of the Secretary of Health and Human Services denying her claim for disability benefits under Title XVI of the Act.

This matter first came to this court during the summer of 1981 following the Appeals Council's conclusion that the decision of the Administrative Law Judge (ALJ) denying disability benefits was not defective under 20 C.F.R. § 404.970. In an opinion dated March 9, 1982, I denied both plaintiff's and defendant's motions for summary judgment, vacated the Secretary's decision and remanded the action to the ALJ for reconsideration. In particular, my 1982 opinion found:

> that the ALJ erred in reaching his decision (a) by failing to accord sufficient weight to Mrs. Boscher's testimony concerning the disabling character of the pain from which she suffered; and (b) by minimizing the significance of the reports which, in my view, tended to corroborate her subjective testimony as to pain and clearly suggest that her complaints of pain were not grossly disproportionate to the medical evidence. *Cf. Rodriguez v. Schweiker*, 523 F.Supp.

1240 (E.D.Pa.1981). Moreover, the ALJ failed to explain clearly, as he was required to under the Third Circuit's recent decision in *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981), the basis for disregarding the conclusion of Dr. Vasile that Mrs. Boscher's activity was "severely limited" and the testimony of Mrs. Boscher concerning her capacity to work.

On remand, the ALJ who had originally decided Mrs. Boscher's case was reassigned the case with instructions from the Appeals Council to conduct further proceedings consistent with the decision of this court. The ALJ, finding that no further hearing was necessary in order to comply with my opinion, issued a revised opinion on July 26, 1982 which again found that plaintiff was not entitled to disability benefits. The Appeals Council, in a decision dated September 23, 1982, adopted the ALJ's findings and conclusions and rejected the objections filed by plaintiff.

This second determination that plaintiff was not disabled was appealed to this court in January, 1984.[1] The matter is now before me on cross-motions for summary judgment.

The basic facts of plaintiff's claimed disability were reviewed in my 1982 decision as follows:

Mrs. Boscher was born on April 4, 1919 and has received a tenth-grade education. From 1967 to 1973, Mrs. Boscher worked as a nurse's aide. In 1973, she left her employment complaining of sharp pains in her back and legs which prevented her from performing the many tasks, including lifting, washing, feeding and walking patients, associated with work as a nurse's aide.

In making his determination that plaintiff was not disabled as defined by the Social Security Act and the appropriate regulations, the ALJ considered plaintiff's testimony at the hearing held before him on January 19, 1981, plaintiff's application for disability benefits filed on February 28, 1980, the various documents filed in the course of processing her request for disability benefits through the Social Security Administration, and the reports of the following physicians: Dr. Robert J. Doman, whose examination of plaintiff was performed at the request of the Social Security Administration; Dr. R.D. Weiss, a radiologist who reported on plaintiff's 1980 back X-rays; and Dr. Salvatore R. Vasile, plaintiff's treating physician since 1974. The ALJ again found that plaintiff's subjective claims of severe pain and inability to perform her past work were not credible. He also concluded that Dr. Vasile's opinion was "not accompanied by a detailed examination or objective clinical findings" and since it was "inconsistent with other medical findings made in the record" it was not "binding." Ultimately, the ALJ found that Dr. Doman's report which showed "only partial restriction of motion" supported the conclusion that plaintiff was not entitled to disability benefits.

The standards under which the Secretary of Health and Human Services is to make a determination as to disability are well established. The Secretary must find: first, that plaintiff suffers from a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of at least twelve months, 42 U.S.C. § 423(d)(1)(A); and second, that her impairment is so severe that it prevents her from engaging either in her previous work, or considering her age, experience, education or work experience, "in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant first has the burden of showing that she is unable to return to her previous work. Once the claimant makes this *prima facie* showing of disability, the burden

---

1. Plaintiff's motion for summary judgment was filed on January 5, 1984. Defendant's motion for summary judgment was filed on January 10, 1984. The supplemental administrative transcript was filed on January 12, 1984 but has a certification date of October 19, 1982. Neither party has presented an explanation for the extended delay between the Secretary's action on remand and the current appeal.

then shifts to the Secretary to demonstrate that the claimant is able to perform specific jobs existing in the economy. *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir.1979).

█ Plaintiff also shoulders the burden of proving that she was disabled within the period of insured eligibility. *Domozik v. Cohen*, 413 F.2d 5, 6 (3d Cir.1969); *Koss v. Richardson*, 329 F.Supp. 1270, 1272 (W.D. Pa.1971). A disability which commences after the expiration of plaintiff's insured status does not entitle plaintiff to disability benefits. In this case, the Appeals Council found that plaintiff's insured status ended on September 30, 1978. Thus, the plaintiff must prove that she was disabled prior to that date in order to recover benefits. The ALJ made his finding of nondisability on the basis of the medical-vocational regulations promulgated by the Department of Health and Human Services. 20 C.F.R. § 404.1520. Those regulations establish a five-step process for an ALJ to follow in a disability case. In *Santise v. Schweiker*, 676 F.2d 925 (3d Cir.1982), that process was determined to be acceptable and not inconsistent with the two-step process described in the previous paragraph. In *Santise*, the Court of Appeals for the Third Circuit noted that the five-step process in the medical-vocational regulations does not change the respective burdens of the Secretary and the claimant. Thus, "the Secretary's ultimate responsibility for rebutting a claimant's *prima facie* showing of disability remains unchanged." 676 F.2d at 938.

The five steps for evaluating a disability claim as established by the regulations upheld in *Santise* are considered in sequence. *First*, the ALJ ascertains whether the applicant is currently working. In the present case, there is no question that the plaintiff is not currently employed and has not been employed since the date of her alleged disability in 1974. *Second*, the ALJ, looking solely at the medical evidence, determines whether the claimed impairment is " 'severe,' that is, of a magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.' " *Santise, supra* at 927.

If the ALJ determines that the impairment is not severe, the claim is denied. *Third*, the ALJ determines whether the impairment equals or exceeds in severity certain impairments described in Appendix 1 of the regulations. If the impairment is so listed, the claim is automatically granted and disability benefits are awarded. But in the present case the parties are in agreement that plaintiff's alleged impairment is not included in Appendix 1. Therefore, the ALJ would be required to go on to the fourth step. *Fourth*, the ALJ evaluates whether the claimant can, despite her limitations, perform her past work. The claim is denied if she can still do the job in which she was employed prior to the onset of the alleged disability. *Fifth*, the ALJ considers whether the claimant can perform any other work within the economy. At this last step of the process, the ALJ consults the medical-vocational tables or "grids." *See Santise v. Schweiker, supra.* If the claimant's age, education, work experience, and residual functional capacity fit within the categories defined by these tables, the regulations require that a particular decision be reached. If the claimant's characteristics do not conform to the categories of the "grids," the ALJ may arrive at a conclusion as to disability which is not defined by the "grids" but which is consonant with the regulations. The ALJ in the present case did not reach this last step of the process.

It is not clear from the ALJ's decision whether he reached his conclusion of nondisability at the second or the fourth step of the five-step process established by the regulations. The brief for the Secretary on the presently pending motion for summary judgment states that "the Secretary reached the fourth step of the evaluation and found that plaintiff's impairments did not prevent the plaintiff from performing her past relevant work as a nurse's aide." Supp. Brief in Support of Defendant's Motion for Summary Judgment at 8. Although the ALJ's "findings" state that plaintiff "has the ability to return to her previous employment as a nurse's aide" (Tr. 116), the ALJ's decision also states that "the undersigned finds the claimant

does not have a severe impairment which would prevent her from engaging in work-related functions." This statement is followed by the statement that "[i]t is further found the claimant has the residual functional capacity to return to her former work as a nurse's aide." Thus, it is difficult to determine whether the ALJ stopped at the second step of the process with a further finding that the fourth step would not be met either or whether he found that a severe impairment existed but determined that plaintiff had not satisfied the fourth step of the process. This difficulty is exacerbated by the ALJ's failure to make specific findings on the five steps of the decision-making process in the sequence defined by the regulations. At various points throughout the decision, the ALJ comments upon facts in the record in a manner which suggests that he is considering a particular step of the process but the decision fails to follow the sequential decision-making process described in *Santise* in any identifiable manner. For the purposes of this Opinion, I will assume that the ALJ ruled (1) that the second step of the process was not satisfied by plaintiff (i.e., that plaintiff did not suffer from a "severe impairment") and (2) that plaintiff did not satisfy step four (i.e., that plaintiff could not still perform her past work).

This court must grant the defendant's motion for summary judgment and affirm the decision of the Secretary if either of these rulings is "supported by substantial evidence." 42 U.S.C. § 405(g). The term "substantial evidence" has been defined as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981). However, the Court of Appeals for the Third Circuit recently expanded upon this definition and reminded district courts reviewing denials of disability benefits that:

> [t]his oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A

single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusions.... The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983).

■ Upon consideration of the evidence of record before the ALJ, the ALJ's decision of July 26, 1982, and the decision of the Appeals Council adopting the ALJ's decision on September 23, 1982, I conclude that the ALJ's determination that plaintiff was not disabled was not based upon substantial evidence. This conclusion is based upon a number of errors in the ALJ's decision.

First, the ALJ applied an improper standard in his determination that plaintiff did not suffer from a "severe impairment." According to the ALJ, "review of the medical evidence has revealed the claimant's condition is not so severe as to *preclude* her from engaging in *work related functions.*" (emphasis added) (Tr. 114). However, the proper standard under the second step of the five-step analysis approved by the Third Circuit in *Santise* is whether the impairment is "of a magnitude sufficient to *limit significantly* the individual's 'physical or mental ability to do *basic work activities.*'" 676 F.2d at 927 (emphasis added). As Judge Shapiro noted in *Reid v. Schweiker*, No. 78–2161 (E.D.Pa. Sept. 6, 1982), a case in which the ALJ applied a standard similar to the one used in the present case, the test used by the ALJ is much more stringent than that established by the regulations. 20 C.F.R. § 416.921(a). This application of an improper legal standard is of itself sufficient to compel me to find that any decision that plaintiff did not

suffer from a "severe impairment" is not supported by substantial evidence.

*Second:* Even if the ALJ had applied the correct legal standard, his factual findings, underpinning his conclusions that (1) plaintiff does not suffer from a "severe impairment" and (2) she can return to her former work as a nurse's aide, could not be sustained. In explaining his reasons for discounting plaintiff's testimony about her pain and consequent inability to work, the ALJ stated that:

> the claimant only appeared to be in slight discomfort at the hearing. She presented testimony that she does not see her physician on a regular basis, and further, she has the ability to walk three blocks, sit for one hour, and perform various activities such as washing dishes, cooking, and taking care of her personal needs. Furthermore, the findings made in the consultative examination fail to substantiate the claimant's allegation that her pain is of a constant duration and severe degree. As noted in the above paragraph, the examination was negative for evidence of joint swelling, crepitus, instability, or muscle atrophy. Therefore, the undersigned finds the claimant's complaints of pain as disabling and incapacitating are not supported by the objective clinical evidence along with observations and testimony made at the hearing.

(Tr. 114–15).

These statements substantially mischaracterize plaintiff's testimony at the hearing before the ALJ. She stated that she did not have to visit her treating physician on a regular schedule but that she went every two or three months to obtain medication for her pain. In fact, in her testimony she stated: "[the doctor] gives me enough of pills [sic] and I don't have to go back right away." (Tr. 45–46). Therefore, the ALJ's finding that plaintiff does not see her physician "on a regular basis" provides no support for the conclusion that her claims of pain are not credible.

Similar problems are apparent in the ALJ's attempt to support his conclusion by reliance on plaintiff's testimony about her ability to (1) walk three blocks (Tr. 41, 46) (after walking three blocks she must stop for 15 to 25 minutes because of the pain in her legs); (2) sit for one hour (Tr. 46) ("If I sit an hour or so, when I get up my back hurts and my leg hurts."); (3) perform various activities such as washing dishes (Tr. 51) ("I try, and then my boys, they do the dishes mostly"), cooking (Tr. 52) ("I try to cook a little bit. And then I can't stand too long on my feet, I got to go back and sit down."), and taking care of her personal needs (Tr. 52) (plaintiff can dress, wash and bathe herself). These statements by plaintiff are not at all inconsistent with her testimony of constant severe pain.

Furthermore, the Third Circuit has made it clear that the ability to perform certain household tasks does not necessarily demonstrate that the claimant is not disabled. *Smith v. Califano,* 637 F.2d 968 (1981).

> Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. [Claimant's] activities are miniscule when compared to a plethora of cases which have held that there was total disability even when the claimant was far more active than [this claimant]. It is well established that sporadic or transitory activity does not disprove disability ...." [the claimant's] sporadic and transitory activities may demonstrate not his ability but his inability to engage in substantial gainful activity.

637 F.2d at 972. Thus, there is no substantial evidence in the record relied upon by the ALJ to support his conclusion that plaintiff's testimony showed that her claims of constant pain were not credible.

The ALJ also commented that her apparent "slight discomfort" at the hearing supports his finding that plaintiff's claims of pain were not credible. However, the ALJ's observations cannot be made the foundation for a conclusion that no pain exists merely because that pain was not visible to the ALJ at the hearing. Such a "sit and squirm" method for deciding disability cases has been condemned by many

courts of appeal, including the Third Circuit. *E.g., Van Horn v. Schweiker,* 717 F.2d 871 (3d Cir.1983); *Freeman v. Schweiker,* 681 F.2d 727 (11th Cir.1982).

■ The ALJ's decision to discount plaintiff's subjective claims of pain is particularly inappropriate in a case such as this one in which both the plaintiff's treating physician and the consultative physician for the Secretary found that plaintiff suffered from pain which is severe at times.[2] Subjective complaints of pain must be considered by the ALJ in making a disability determination. Such complaints standing alone may support a finding of disability. *Bittel v. Richardson,* 441 F.2d 1193 (3d Cir.1971). Moreover, when such testimony of subjective pain is supported by competent medical evidence as in the present case, that testimony is entitled to "great weight." *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979). Therefore, the ALJ's determination that plaintiff's complaints of pain were not credible is unsupported by the record and, on the basis of the controlling precedent in this circuit, her complaints are entitled to great weight.[3]

■ *Third:* In addition to his determination that plaintiff's testimony as to her pain and physical limitations was not credible, the ALJ found, in response to my earlier opinion, that Dr. Vasile's report was not "binding" because it was not supported by a detailed examination or objective clinical findings and was inconsistent with "other medical findings made in the record." (Tr.

115). First, although the regulation cited by the ALJ states that a statement as to the claimant's disability which is not supported by clinical findings is not "binding" on the Administration, this regulation does not then require the ALJ *completely to discount* that medical finding. Second, the ALJ's determination that the opinion of Dr. Vasile was not supported by "objective clinical findings" is clearly in error. Dr. Vasile's report, although brief, refers to X-rays taken in 1974 and 1980 which showed "congenital bilateral spondylolysis at L5 with first degree spondylolisthesis of L5 upon S1 and disc space narrowing at L5-S-1 with degenerative spurring." Furthermore, Dr. Vasile's statement that the "above patient has been under my care for a low back condition since January 1974" shows that his opinions are based upon examinations of the patient during the six years in which plaintiff has been in his care. Finally, since Dr. Vasile has been plaintiff's treating physician, his opinion that plaintiff's "ability to work is severely limited because of low back pain as she is unable to do any lifting, bending, climbing, or repetitive reaching" is deserving of substantial weight. *See Giordano v. Schweiker,* 551 F.Supp. 997 (E.D.Pa.1982). *See also, Kent v. Schweiker, supra* at 114. The ALJ's decision to ignore the opinion of Dr. Vasile is, therefore, totally unsupported by the record.

One ground for my 1982 remand of this case was the ALJ's failure to consider the

---

**2.** Dr. Doman, the consultative physician, found that "[h]er backache is severe at times radiating down both legs." (Tr. 90). Nowhere in his report does Dr. Doman discount plaintiff's complaints of pain or suggest that they are not credible.

Dr. Vasile, plaintiff's treating physician, states that plaintiff is "severely limited because of low back pain." (Tr. 98)

**3.** The ALJ found that the consultative examination failed to substantiate claimant's allegations of constant and severe pain. As a basis for this statement, the ALJ notes that there was no evidence of joint swelling, crepitus, instability, or muscle atrophy. However, in light of the fact that this doctor did not discount plaintiff's claims of pain, his failure to find certain types

of objective evidence which would support plaintiff's subjective claims does not show that plaintiff's claims are incredible. It should be noted that before filing his report Dr. Doman did not wait to receive the results of the X-rays he ordered which might have provided sufficient objective evidence to satisfy the ALJ.

The Secretary notes that complaints of pain which are grossly disproportionate to the medical findings may be discounted as not credible. *Baith v. Weinberger,* 378 F.Supp. 596, 603 (E.D. Pa.1974). However, there is no suggestion in this record that plaintiff's complaints of pain are "grossly disproportionate" to the medical findings. There are certainly no "medical findings" to that effect.

report of Dr. Weiss, a radiologist who reported on certain X-rays of plaintiff taken in 1980. Those X-rays were requested by Dr. Doman but he did not await the report on the X-rays before filing his own report. The ALJ's only reference to Dr. Weiss' report is as follows: "the fact that the claimant has one symptom of a back impairment does not equate to a severe impairment as described in the Listing of Impairments for Appendix 1, Regulation No. 4." (Tr. 114). However, the fact that the claimant's impairment is not included in the list in Appendix 1 to the regulations does not mean that plaintiff does not suffer from a severe impairment or that plaintiff is able to return to her former employment. The list of impairments which is considered in the third step of the five-step process is merely a short-cut by which disability is automatically found upon a showing that the claimant suffers from a listed impairment. However, the findings of Dr. Weiss were still clearly relevant to the determinations made in the second and fourth steps of the evaluation process. The ALJ's failure to consider Dr. Weiss' report for those purposes perpetuated the error found to exist in his first decision.

Thus, the ALJ improperly discounted or ignored the testimony of the plaintiff, the report of her treating physician and the report of Dr. Weiss in reaching his conclusion that plaintiff was not disabled. The ALJ's determination of nondisability was based entirely upon his evaluation of the report of Dr. Doman, the consultative physician for the Secretary. However, even that opinion does not clearly support the ALJ's conclusion. Furthermore, in light of the other evidence in the record, Dr. Doman's report does not provide the "substantial evidence" necessary to support a determination in favor of the Secretary.

First, Dr. Doman states in his report:
At present she complains of occassional [sic] sudden pain in the right foot causing her to fall. Her backache is severe at times radiating down both legs. She is being treated at the Linwood Clinic in Linwood Pa with Darvon etc. Dr. Vasile. [sic]
Physiatric Examination: Short markedly obese female age 60. Deep reflexes are equal bilat. No joint swelling noted. No joint crepitus noted. No AP or lateral instability of the knees. Hip motions are partially restricted bilat on flexion by her obese abdomen. Weight bearing appears normal on both feet. Patient walks with a normal gait.
Summary: This 60 yr. old gives a vague history of a compressed vertebra with recurrent backache and bilat. Leg pain. She shows no evidences of herniated disc. X-rays of the L–5 ... were ordered to determine the status of the compression. They were ordered at Sacred Heart Gen. Hosp. of Chester Pa.

(Tr. 90). He makes no specific findings as to the plaintiff's ability to work in her former job or in any job. Moreover, Dr. Doman never revised his report to reflect the results of the X-rays that he apparently believed to be necessary to a proper evaluation of the vertebra compression which is the primary basis for plaintiff's claimed disability. Thus, it was at least questionable for the ALJ to give Dr. Doman's findings such significant weight.

The physical capacities evaluation performed by Dr. Doman, upon which the ALJ relies quite heavily, shows clearly enough that plaintiff's movements are limited but does not indicate whether plaintiff's pain was considered in the determination of her ability to perform the various tasks listed. See Santiago v. Richardson, 345 F.Supp. 438 (E.D.Pa.1972). If plaintiff's pain was not considered in this evaluation of her abilities, there is no proper basis for extrapolating from Dr. Doman's findings of plaintiff's ability to walk, stand, sit, lift, etc., to a conclusion that plaintiff is able to work at her former job or any job. In light of the fact that Dr. Doman's report supports plaintiff's claims of disability in some respects and provides only weak support for a finding of nondisability, it is apparent that there was no substantial evidence to support the ALJ's conclusion. See Aquino

*v. Harris,* 516 F.Supp. 265 (E.D.Pa.1981).[4] In light of the foregoing analysis, it is evident that the Secretary's motion for summary judgment must be denied.

 ▉ In order for plaintiff to establish her entitlement to summary judgment she must satisfy her initial burden of proof by showing that she is unable to return to her customary occupation. Then, if there is no substantial contrary evidence and there is no evidence of the possibility of alternative employment, the Secretary's decision should be reversed and disability benefits should be awarded to plaintiff. *Rossi v. Califano, supra* at 59.

 ▉ In the present action, plaintiff clearly has satisfied her initial burden of proof by presenting a *prima facie* showing of disability. "A claimant satisfies her initial burden of showing that she is unable to return to her previous employment when her doctor substantiates her subjective claims." *Rossi, supra* at 57. Plaintiff has made such a showing in the record of this action. Not only does her testimony fully support her claims of inability to return to the duties of a nurse's aide but the physician who has treated plaintiff since 1974 states that she can not "do any lifting, bending, climbing or repetitive reaching." (Tr. 98). This evidence establishes that plaintiff cannot return to her former work as a nurse's aide which, as I noted in my earlier opinion, involved lifting, washing, feeding and walking patients.

In response to this *prima facie* showing of disability the Secretary can point to *no* "substantial contrary evidence" to defeat plaintiff's claim of disability as required by *Rossi.* The only evidence of record which arguably supports a finding that plaintiff is not disabled—the report of Dr. Doman—is clearly insufficient under controlling authority in this Circuit.

In *Rossi* the Court of Appeals for the Third Circuit stated that:

> [t]o overcome [claimant's *prima facie* case of disability] with medical witness testimony alone, the medical expert must at least be prepared to commit his professional opinion as to whether or not appellant is capable of working and as to what he can do. Anything less is not in our view "substantial evidence."

602 F.2d at 58. *E.g., Brennan v. Schweiker,* 542 F.Supp. 680 (E.D.Pa.1982); *Gonzalez v. Harris,* 496 F.Supp. 1014 (E.D.Pa. 1980). A careful examination of Dr. Doman's report reveals no such "commit[ment] of his professional opinion." The report only suggests the possibility that plaintiff can return to work by inference from the physical capacities evaluation. There are no direct statements from Dr. Doman that plaintiff can return to her former employment or that there are particular types of work other than plaintiff's former occupation which plaintiff could do. Thus, Dr. Doman's report does not carry the Secretary's burden of proof as defined in *Rossi.*[5]

The conclusion that plaintiff is disabled is also supported by the "grids" established by the Department of Health and Human Services for use in analyzing particular disability claims. At the fifth step of the analysis prescribed by the regulations, the ALJ is required to look to the medical-vocational tables or "grids" in Appendix 2 of the regulations.

When evaluating a claimant according to the "grids," the ALJ considers the age,

---

4. This case is not similar to *Perez v. Secretary of Health, Education and Welfare,* 622 F.2d 1 (1st Cir.1980), in which the Court of Appeals for the First Circuit found that the report of a consultative physician that was in conflict with the other medical reports could be the basis for a conclusion of nondisability. In *Perez,* Chief Judge Coffin expressly distinguishes the facts of that case from other cases in which a single opinion of such a physician has been found inadequate. 622 F.2d at 3. There, unlike the present case, the consultative physician made detailed findings of residual functional capacity which were consistent with other evidence of record.

5. As noted earlier in this Opinion, Dr. Doman's report also fails to constitute substantial contrary evidence since it does not suggest that plaintiff's complaints of pain are not credible, fails to consider the requested X-rays, and does not clearly consider plaintiff's pain in the physical capacities evaluation.

education, previous work experience and residual functional capacity of the claimant. Each of these four characteristics is subdivided into a number of categories which are defined by the regulations. For example, in the present case, the plaintiff would be classified as of "advanced age" since she was 55 or older at the alleged date of the commencement of disability. 20 C.F.R. § 404.1563(d). Plaintiff's prior work experience would either be "unskilled," since the tasks of a nurse's aide can be learned in a short period of time, or "semi-skilled". 20 C.F.R. § 404.1568. However, if her work experience is classified as "semi-skilled" it is also important to consider whether or not her skills would be transferable to other "semi-skilled" work. 20 C.F.R. § 404.1568(d). Due to the unique nature of the duties of a nurse's aide when compared with other "semi-skilled" types of work, plaintiff's work experience would properly be classified as nontransferable if it is considered "semi-skilled." The regulations note that nontransferable semi-skilled work experience is treated as equivalent to unskilled work experience when making the medical-vocational evaluation. 20 C.F.R. § 404.1565(a).

The last characteristic which is considered in the "grids" is the degree of physical exertion required by various types of potential jobs. "Medium work" is defined as work which requires "frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). There is no medical evidence of record that plaintiff can frequently lift and carry weights of 25 pounds. Dr. Doman's physical capacities evaluation indicates that plaintiff can lift up to 20 pounds but does not assess her ability to carry such weights any significant distance and does not suggest that she can lift greater weights frequently.[6] The report of plaintiff's treating physician states that she can do no lift-ing—a recital which is consistent with plaintiff's testimony at the hearing. Thus, there is no evidence which would support a classification of plaintiff's residual functional capacity as allowing her to perform "medium work." The category below "medium work" is "light work." Such work involves lifting no more than 20 pounds and frequently lifting and carrying 10 pounds. Light work also "requires a good deal of walking or standing, or ... involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Although plaintiff's testimony and the report of Dr. Vasile would suggest that plaintiff could not perform "light work" as so defined, Dr. Doman's report suggests that she can. Assuming that Dr. Doman's report accurately represents plaintiff's physical capacities, she would be found disabled nonetheless. Table No. 2 of Appendix 2 of the regulations, which is the proper table for determining whether a person is disabled for light work, shows that plaintiff would be classified as "disabled" for light work due to her age and the nontransferable nature of her skills. Thus, under the highest category of residual functional capacity which arguably applies to plaintiff, the Secretary would be required to find plaintiff disabled under the regulations. 20 C.F.R § 404.1569.

In summary, defendant has failed to show that the revised decision of the ALJ is supported by substantial evidence. Therefore, the defendant's motion for summary judgment will be denied. Plaintiff has, however, presented a *prima facie* showing of disability which has not been rebutted by substantial contrary evidence and the Secretary has not suggested any alternative jobs which plaintiff could perform in light of her impairment. Accordingly, plaintiff's motion for summary judgment will be granted.[7]

6. Dr. Doman's physical capacities evaluation shows that plaintiff can lift 21 to 50 pounds only "occasionally."

7. Although remand for reconsideration is the more common treatment of cases in which the

ALJ's report is not supported by substantial evidence, it is clear that, even if the evidence is construed most strongly against plaintiff, she would be entitled to a finding of disability under the regulations and controlling precedent. Remand is thus both unnecessary and, under

The evidence which supports plaintiff's claim of disability also supports a finding that plaintiff was disabled on or before her last date of insured status, September 1978. Since, under the Social Security Act, her entitlement to benefits would commence after a waiting period which would begin to run from the first day of the seventeenth month prior to the month of her application, there is no need to determine whether plaintiff was disabled prior to September 1978, 42 U.S.C. § 423(a)(1) and (c)(2).[8] This action will be remanded to the Secretary for a determination of benefits to be awarded.

the circumstances, unwarranted. *Smith v. Califano,* 637 F.2d 968, 972–73 n. 1 (3d Cir.1981).

8. Plaintiff's application was filed in February 1980. Seventeen months prior to that month is September 1978.