966 F.2d 1440
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Carmen DE JESUS, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 91-2169.
 United States Court of Appeals,
First Circuit.
 June 19, 1992
 
 Salvador Medina De La Cruz on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Joseph E. Dunn, Assistant Regional Attorney, Office of the General Counsel, Department of Health and Human Services, on brief for appellee.
 Before Breyer, Chief Judge, Selya and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Plaintiff-appellant Carmen De Jesus filed an application for Social Security disability benefits on October 28, 1985, alleging an inability to work since December 12, 1982 on account of a hip condition, a back condition, and nerves. After a hearing, the ALJ found that claimant met the eligibility requirements of the Act only through December 31, 1987. The ALJ found claimant not disabled at step 5 of the sequential evaluation process, 20 C.F.R. § 404.1520(f), on the ground that vocational testimony showed the existence of jobs available in the economy that claimant could perform. After the Appeals Council denied claimant's request for review, claimant appealed to the district court, which remanded the case to the Secretary for further vocational testimony concerning the effects of claimant's nonexertional limitations.
 
 
 2
 On remand, the ALJ, after a further hearing at which additional vocational testimony was received, again found claimant not disabled at step 5 of the sequential evaluation process on the ground that vocational testimony showed the existence of jobs available in the economy that claimant could perform. After the Appeals Council denied claimant's request for review, claimant appealed to the district court, which summarily affirmed. Claimant appeals. We affirm.
 
 
 3
 At the second hearing, the ALJ asked the vocational expert what jobs could be performed by a claimant with claimant's "age, academic limitation, and work experience" who "could only perform sedentary work which allows alternating positions." The vocational expert identified the jobs of final examiner and damaged garment sorter, both unskilled jobs available in significant numbers in Puerto Rico. At the first hearing, the vocational expert, in response to essentially the same hypothetical, also identified three other jobs available in the economy such a claimant could perform: ticketer, wire preparation worker, and mica classifier. The ALJ further asked, at the second hearing, whether a claimant could work as a final examiner and damaged garment sorter with the following mental impairment: "[A]ppears tense, slightly anxious. Her affect is appropriate, good contact, logical, good attention and concentration. Average intelligence, without any memory impairments." The vocational expert testified that since these were unskilled jobs, a claimant with these mental limitations could perform them. Finally, the vocational expert testified that claimant could not perform these jobs if claimant had "pain that affect[ed] her concentration and attention in a sustained manner."
 
 
 4
 There is ample evidence in the record to support the ALJ's conclusion, as expressed in the hypothetical to the vocational expert, that claimant's exertional impairments permitted her to perform sedentary work as long as she could occasionally alternate positions. Dr. Felix Vilella Suau, a consulting physician, examined claimant on March 20, 1987, and diagnosed a number of back and hip problems, finding that "claimant's condition is of a permanent nature and that no treatment is indicated at present." In his report he also stated that "claimant showed no difficulty to stoop, squat, kneel or bend forwards." Dr. Vilella filled out a residual functional capacity assessment form on which he found that claimant could lift and/or carry up to fifteen pounds; could stand and/or walk two to four hours in a day, thirty minutes without interruption; had an unimpaired capacity to sit; and could balance, stoop, crouch, kneel, and crawl occasionally, but could not climb. This assessment fully supported an ability to perform sedentary work. See 20 C.F.R. § 404.1567(a).
 
 
 5
 In addition, Dr. Rafael Morales Fernandez, a consulting orthopedic surgeon, examined claimant on February 6, 1985, and reported the following findings:
 
 
 6
 Mrs. De Jess was able to sit, stand, bend, reach, squat and stoop well. She ambulates with a mild to moderate limp on her left lower extremity though with a fairly easy ambulation. The general performance and function of this lady, while in the office and during the examination, was adequate. At present I believe this lady can engage in gainful activities, avoiding strenuous or heavy working conditions or those requiring full periods of standing and/or ambulation.
 
 
 7
 This assessment, too, supported an ability to perform sedentary work. See id.
 
 
 8
 These medical findings are more than sufficient to provide substantial evidence for the ALJ's conclusion that claimant could perform sedentary work alternating positions. Contrary to claimant's contention, this conclusion is not thrown into doubt by the fact that the findings of claimant's treating physician, Dr. Grovas, paint a more severe, limiting picture of claimant's exertional impairments. We have held that the medical opinions of treating physicians are not necessarily entitled to greater weight than those of consulting physicians. Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Perez v. Secretary of Health, Education and Welfare, 622 F.2d 1 (1st Cir. 1980).
 
 
 9
 Claimant also objects that the Secretary should have found that her condition met section 1.03 of the listing of impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. Section 1.03, however, requires "arthritis of a major weight-bearing joint." Although Dr. Vilella Suau noted claimant's claims of "generalized arthritis," he diagnosed congenital dislocation of the left hip, not arthritis. Dr. Morales Fernandez stated the same diagnosis. The ALJ was entitled to rely on these medical findings to conclude that this listing was not met.
 
 
 10
 The record amply supports the ALJ's finding that claimant's mental condition made her tense and slightly anxious and imposed no significant restriction on her work ability except to limit her to unskilled jobs. The report of Dr. Rafael Miguez Balseiro, a consulting psychiatrist who evaluated claimant on March 24, 1987, fully supported the ALJ in this regard. Dr. Miguez Balseiro diagnosed a dysthymic disorder and found claimant's mood to be one of mild anxiety, her affect to be appropriate, and her contact with reality good. She was coherent, logical, and relevant, with no ideas of reference and no evidence of suicidal, homicidal or aggressive ideas. She was found to function at a normal intellectual level, with a good concentration and attention span and unimpaired memory, and to be oriented in time, person, place and present situation. Her judgment was found good, with claimant able to handle funds. Dr. Miguez Balseiro filled out a mental functional capacity assessment form and essentially noted no limitations, finding claimant's mental ability to handle job functions to be either "good" or "very good" in all areas. There can be no question that these findings constitute an adequate basis for the ALJ's conclusions about claimant's mental impairment.
 
 
 11
 There is no substance to claimant's argument that the ALJ failed to adequately consider claimant's complaints of pain and failed to meet the requirements of Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986). We have already noted the presence in the record of evidence that claimant's physical impairments do not constitute an objective physical basis for pain so severe as to preclude sedentary work alternating positions. The ALJ, furthermore, also permissibly relied on his own observations of claimant at the hearing, stating:
 
 
 12
 The claimant was not observed in any distress during the different evaluations and no evidence of distress was observed during the prior oral hearing nor was she in distress during the recent oral hearing. There were no signs of pain. Her appearance, response, speech, intellect, mood and thought processes appeared normal. She walked slowly and used a cane.
 
 
 13
 The ALJ noted that claimant had not sought treatment from the date of her consulting examination in March 1987 through the expiration of her eligibility for benefits on December 31, 1987, a circumstance tending to undercut claims of disabling pain. The ALJ also considered evidence of claimant's daily activities, finding incredible claimant's assertion that her two minor sons perform all the household chores. Thus, the ALJ's decision to discount claimant's allegations of disabling pain was fully supported.
 
 
 14
 In particular, the ALJ was entitled to disregard the vocational expert's testimony that claimant could not perform the jobs he enumerated if claimant's pain affected her concentration and attention in a sustained manner. The ALJ permissibly concluded that claimant's pain did not have that effect.
 
 
 15
 For the reasons stated above, we reject claimant's contention that the ALJ violated the district court's remand order by failing to obtain adequate vocational testimony about claimant's nonexertional impairments (her mental condition and her pain).
 
 
 16
 Finally, we are in no way troubled by claimant's objection that the ALJ impermissibly ignored her testimony that the side-effects of her medications made her too sleepy to engage in work activity. There was no mention of this problem anywhere in the medical evidence. In the absence of any medical evidence, the ALJ was entitled to disregard claimant's testimony.
 
 
 17
 The judgment of the district court is affirmed.